IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

Scott G.,[1]

           Plaintiff,

v.

COMMISSIONER of SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

No. 3:19-cv-00890-HL

**OPINION AND ORDER**

HALLMAN, United States Magistrate Judge:

    Plaintiff Scott G. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq*. For the following reasons, this case is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.      Plaintiff's Application**

Plaintiff alleges disability based on diabetes, high cholesterol, high blood pressure, obstructive sleep apnea, obesity with a body mass index ("BMI") over 60, lipid metabolism disorder, lumbar disc herniation, lumbar radiculopathy, bilateral carpal tunnel syndrome, and

lumbar spinal stenosis with neurogenic claudication. Tr. 293.[2] At the time of his alleged onset date, he was 38 years old. Tr. 25, 289. He has one year of college and past relevant work experience as a grinder and inspector. Tr. 25, 294.

Plaintiff protectively applied for DIB on July 20, 2016, alleging an onset date of July 13, 2013. Tr. 14, 77. His application was denied initially on August 17, 2016, and on reconsideration on September 26, 2016. Tr. 14, 75-87. Plaintiff subsequently requested a hearing, which was held on February 5, 2018, before Administrative Law Judge ("ALJ") Linda Thomasson. Tr. 35-74. Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Jeffrey Cockrum, also testified. *Id.* On April 4, 2018, the ALJ issued a decision denying Plaintiff's claim. Tr. 14-27. Plaintiff requested Appeals Council review, which was denied on April 2, 2019. Tr. 1-4. Plaintiff then sought review before this Court.[3]

## II. Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[2] Citations to "Tr." are to the Administrative Record. (ECF No. 12).
[3] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF No. 28).

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

### III. The ALJ's Decision

The ALJ applied the five-step sequential evaluation process to determine whether Plaintiff was disabled.  Tr. 14-27.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 13, 2013.  Tr. 16.

At step two, the ALJ found that Plaintiff has the following severe, medically determinable impairments: "spine disorder; obesity; obstructive sleep apnea; diabetes mellitus; essential hypertension; carpal tunnel syndrome (CTS) (20 CFR 404.1520(c))."  *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.  Tr. 18.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff has the RFC to perform sedentary work, subject to the following limitations:

> claimant needs to use a cane when walking; he is limited to occasional pushing and pulling with the lower extremities, including the operation of foot controls; he would need to change position for 2 minutes after 1 hour of sitting (during this time he can remain at the work station); he should never climb ladders, ropes, or scaffolds or crawl; all other postural activities can be done occasionally; he is limited to frequent handling, fingering, and feeling bilaterally; he should have no exposure to hazards, such as moving mechanical parts, unprotected heights, or operating a motor vehicle; he could have occasional exposure to vibrations.

Tr. 19.

At step four, the ALJ found Plaintiff unable to perform his past relevant work. Tr. 25.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could

5 – OPINION AND ORDER

perform, including work as a document preparer, addresser, and call out operator. Tr. 26. The ALJ therefore concluded that Plaintiff was not disabled and, as a result, denied his claim. Tr. 27.

## DISCUSSION

Plaintiff contends that the ALJ committed four errors: (1) she improperly rejected Plaintiff's subjective symptom testimony concerning the extent of the impairments caused by his spine disorder and obesity; (2) she improperly discounted the lay testimony from plaintiff's wife concerning the same; (3) she did not adequately explain why Plaintiff's conditions did not meet a listed impairment for spine disorder at step three; and (4) she did not adequately discuss Plaintiff's obesity when assessing Plaintiff's RFC. Plaintiff asserts that as a result of these errors, the ALJ's step three analysis and findings regarding his RFC were not supported by substantial evidence, and Plaintiff asks that this Court remand this case to the ALJ for further proceedings.

As is explained below, the Court finds that the ALJ's decision was based on proper legal standards, and the findings are supported by substantial evidence in the record. Accordingly, the Court affirms the Commissioner's decision denying Plaintiff's claim. Plaintiff's arguments are discussed in turn below.

**I.    Plaintiff's Subjective Symptom Testimony**

   **A.    Legal Standards**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could

reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms.  *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms.  *Id.*  The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so."  *Id.*  Thus, the ALJ must specifically identify the testimony that she does not credit and must explain what evidence undermines the testimony.  *Holohan*, 246 F.3d at 1208.  General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence.  *Id.*  To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

    **B.**    **Analysis**

Plaintiff first argues that the ALJ improperly rejected his subjective symptom testimony.  As is discussed in the ALJ's decision, Plaintiff testified that he was unable to work due to significant pain, difficulty concentrating, and difficulty sitting for extended periods.  Tr. 19, 55-57.  He testified that he wore a brace on his right leg at all times and occasionally used a cane.  Tr. 56-57.  Further, he testified that he spent most of his day in a recliner or sleeping.  Tr. 58-59.

In applying the first step of the credibility framework, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  Tr. 19.  In applying the second step, however, the ALJ discounted Plaintiff's testimony, finding that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  *Id.*

Plaintiff argues that the ALJ's findings lacked specificity, which was contrary to the Ninth Circuit precedent set forth in *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Pl. Open. Br. 8-10, ECF No. 21. *Brown-Hunter* requires an ALJ to specify what testimony she finds not credible and provide clear and convincing reasons—supported by evidence in the record—to support that determination. *Brown-Hunter*, 806 F.3d at 489. Here, the ALJ provided sufficient reasons for rejecting portions of Plaintiff's testimony. Tr. 19-20. The ALJ reasoned that Plaintiff's testimony of his disabling limitations was inconsistent with (1) evidence of his daily activities and (2) evidence from the medical record.

First, the ALJ pointed to evidence of Plaintiff's daily activities: Plaintiff independently performed activities of daily living ("ADLs"), took college classes for a business accounting degree, performed light household chores, looked for jobs, made models, prepared simple meals, shopped for groceries, and socialized at his parents' house. Tr. 20, 59, 60, 535, 609. The ALJ specifically noted that evidence of Plaintiff's daily activities was inconsistent with Plaintiff's testimony regarding the severity of pain and how it precluded him from performing any work activities. Tr. 20. The Court finds that the evidence of Plaintiff's daily activities contradicts Plaintiff's testimony and was, therefore, a convincing reason to reject Plaintiff's testimony. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (concluding that when assessing credibility, the ALJ "may consider, among other factors, . . . 'the claimant's daily activities'") (internal citation omitted).

Second, the ALJ found that medical evidence was inconsistent with Plaintiff's testimony regarding the severity of his symptoms because medical evidence demonstrated that Plaintiff's condition improved with treatment. Factors relevant to evaluating a plaintiff's symptoms include the "effectiveness . . . of any medication" or "[t]reatment, other than medication[,]" that the

plaintiff has taken to alleviate his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). Although subjective symptom testimony may not be wholly rejected based on a lack of corroborating objective medical evidence, medical evidence is still a relevant factor in determining the severity of a plaintiff's symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ appropriately considered inconsistencies between Plaintiff's alleged limitations and medical evidence in the record.

To begin, the ALJ credited medical evidence that established Plaintiff's spine disorder and morbid obesity, but the ALJ found that medical evidence that demonstrated a gap in treatment was inconsistent with Plaintiff's alleged degree of limitation. Tr. 20. The ALJ observed that in September 2013, Plaintiff was prescribed medication following an evaluation for lower back pain. Tr. 20, 519, 521-22. One month later, Plaintiff reported sixty percent pain relief after use of the medication and required little treatment for his back pain, which led to a gap in treatment for one year. Tr. 20, 516. The ALJ found that the gap in treatment was inconsistent with the extent of Plaintiff's alleged symptoms and limitations. Tr. 20.

Additionally, the ALJ found that the medical evidence demonstrated that Plaintiff had improved symptoms and functioning following surgery in April 2016. Tr. 21. In April 2016, Plaintiff underwent a bilateral L4-L5 laminectomy with decompression for his back and right leg pain. Tr. 21, 570, 580, 585. The ALJ observed that three months after the surgery, Plaintiff reported that his overall pain was at least sixty percent improved, and Plaintiff rated his pain as a three out of ten compared to an eight out of ten before the surgery. Tr. 21, 663. As such, the ALJ found that although the "medical records related to [Plaintiff's] spine disorder and morbid

obesity document the persistence of some symptoms and support some functional limitations," the medical evidence was inconsistent with Plaintiff's alleged "debilitating limitations." *Id.*[4]

The Court finds that the ALJ provided a rational review that was sufficiently specific, with clear and convincing reasons, to discount Plaintiff's testimony. Because the ALJ provided at least one legally sufficient reason for rejecting Plaintiff's statements, her credibility evaluation was free of harmful error. *See Lingenfelter*, 504 F.3d at 1036-37 (evaluating separately two reasons that the ALJ provided in rejecting the plaintiff's subjective symptom testimony when reviewing whether the ALJ provided a clear and convincing reason for an adverse credibility finding); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (concluding that the ALJ's error in discounting a plaintiff's testimony was harmless because the ALJ provided other sufficient reasons for discrediting the plaintiff's testimony). Thus, the ALJ identified and relied on substantial evidence that undermined Plaintiff's testimony that he was unable to work due to the severity of his symptoms.

---

[4] Plaintiff contends that the ALJ's use of the word "debilitating" demonstrates that the ALJ applied an incorrect legal standard. Pl. Open. Br. 10-11 (citing Tr. 20-21). Although Plaintiff correctly notes that when an ALJ makes credibility determinations, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), the ALJ did not do so here. In using the word "debilitating" once in her decision, the ALJ was finding that Plaintiff's testimony—that his pain and conditions precluded him from all work activity—conflicted with the medical record and supported some, but not total, functional limitations. Tr. 21. Moreover, the ALJ (1) recited the statutory definition of "disability," Tr. 14, (2) referred to the correct regulations in evaluating Plaintiff's subjective testimony, Tr. 19, and (3) applied the sequential evaluation process required under the appropriate regulations, Tr. 14-27. Thus, the ALJ applied the correct legal standard notwithstanding the use of the term "debilitating."

10 – OPINION AND ORDER

## II.  Lay Testimony

Second, Plaintiff argues that the ALJ improperly discounted statements from Plaintiff's wife.  An ALJ may discount lay witness testimony if she provides reasons that are "germane" to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ did so here.

In 2014, Plaintiff's wife completed a form that described Plaintiff's limitations, noting that Plaintiff could not perform any physical labor, do household chores, walk anywhere, lift over five pounds or squat, or concentrate for more than one hour.  Tr. 274, 276, 277-79.  In 2016, she completed another form also describing Plaintiff's limitations, explaining that Plaintiff's back pain made his days unpredictable.  Tr. 307-14.  The ALJ gave "little weight" to Plaintiff's wife's statements when the ALJ determined Plaintiff's RFC, finding that the wife's statements were "inconsistent with the objective evidence, treatment history, and [Plaintiff's] demonstrated level of functioning, as discussed throughout this decision."  Tr. 25.

Plaintiff argues that the ALJ's reason for discrediting the wife's testimony on the ground that the testimony was inconsistent with Plaintiff's "demonstrated level of functioning, as discussed throughout this decision," did not constitute germane reasoning.  Pl. Open. Br. 13.  Further, Plaintiff contends that his wife's statement that Plaintiff could only lift five pounds would invalidate the ALJ's RFC finding if properly credited.  *Id.* at 12.

The ALJ provided germane reasons for discrediting Plaintiff's wife's testimony.  In rejecting lay testimony, "[i]nconsistency with medical evidence is one such reason."  *Bayliss v. Bayhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  Medical records demonstrated that Plaintiff did not have any severe mental impairments, Tr. 17, 95, 118, 252, he could perform daily activities independently, Tr. 535, and his physical symptoms improved with treatments.  Tr. 20-21, 570, 580, 663.  The ALJ also noted medical evidence from several doctors that Plaintiff could carry

between ten to twenty pounds. Tr. 22-23, 83, 111. Additionally, the ALJ's reliance on Plaintiff's "demonstrated level of functioning" did constitute germane reasoning, given that the ALJ's previous analysis discussed evidence of Plaintiff's daily activities and functioning, including Plaintiff's ability to look for jobs, perform light household chores, and attend college classes. Tr. 19-20. Thus, the ALJ did not commit any error and provided germane reasons for discrediting the Plaintiff's wife's lay testimony.

### III.   ALJ's Step Three Finding

#### A.   Legal Standard

At step three, the ALJ must determine whether a claimant's impairment meets or equals an impairment listed in the Listing of Impairments ("the Listings"). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. A mere diagnosis is insufficient to meet or equal a listed impairment. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d). To meet a listed impairment, a claimant must establish that he "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). Plaintiff contends that the ALJ did not adequately explain why Plaintiff failed to meet Listing 1.04(A) ("1.04(A)"). To meet 1.04(A), a claimant must prove that he has

> [d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda eguina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20. C.F.R. Part 404, Subpt. P., App. 1, § 1.04. To satisfy the duration requirement for 1.04(A), "the evidence must show that [the] impairment[] has lasted or can be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4).

In determining whether a plaintiff's condition meets a listed impairment, the ALJ's "findings should be as comprehensive and analytical as feasible and, *where appropriate*, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990) (internal citation and quotations omitted) (emphasis added). It is not necessary "to state why a claimant failed to satisfy every different section of the listing of impairments." *Id.* at 1201. Further, in *Gonzalez*, the Ninth Circuit concluded that a four-page evaluation of evidence within an ALJ decision was adequate, even though the ALJ did not state what evidence supported the conclusion that the plaintiff's impairments did not meet or exceed the list of impairments. *Id.* at 1200-01.

**B.     Analysis**

Here, the ALJ ultimately found that Plaintiff's "spine disorder does not meet or equal listing 1.04 for disorders of the spine. [Plaintiff] does not have nerve root compression with the other cited findings in subsection (A)." Tr. 18.[5] The ALJ did not state what evidence supported the finding that Plaintiff's impairment did not meet or exceed the listing of impairments. In

---

[5] The ALJ also found that Plaintiff's other impairments—including obesity, sleep apnea, diabetes, hypertension, and carpal tunnel syndrome—did not meet or equal an impairment listed in the listings. Tr. 18. The Court does not address those findings because Plaintiff does not challenge them on review.

13 – OPINION AND ORDER

determining Plaintiff's RFC, however, the ALJ provided a six-page summary of the record that included medical evidence and included Plaintiff's testimony. Tr 19-25.

Plaintiff argues that the ALJ's explanation of her step three finding was inadequate and prejudicial. Pl. Open. Br. 15. Plaintiff offers that the ALJ's mention of 1.04(A) was too vague, because the ALJ did not state the requirements of an impairment under 1.04(A). *Id.* at 13. Further, Plaintiff argues that the ALJ's failure to discuss particular medical evidence—including evidence of symptoms also listed in 1.04(A)—demonstrates that the ALJ's finding was unsupported by substantial evidence. *Id.* at 14.[6]

On this record, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff did not have an impairment or a combination of impairments under 1.04(A). In line with *Gonzalez*, the ALJ's six-page summary of the medical evidence here was an adequate statement of the "foundations on which the ultimate factual conclusions are based." That summary discussed medical evidence that Plaintiff's symptoms improved with treatment, which in one instance led to a gap in treatment for one year. Tr. 20-22. Moreover, although Plaintiff cites to instances in the medical record where some criteria for 1.04(A) arose, Plaintiff has failed to argue or demonstrate that those symptoms were simultaneously present, or that such level of

---

[6] Plaintiff does not argue on review that the medical evidence demonstrates that he meets 1.04(A). He also does not cite to where he made such an argument before the ALJ. Rather, Plaintiff solely argues that the ALJ did not sufficiently explain why Plaintiff did not meet 1.04(A). In making that exclusive argument, Plaintiff points to medical evidence in the record that the ALJ should have cited in coming to her conclusion. *See* Pl. Open. Br. 14. This argument is insufficient to demonstrate that the ALJ erred. Even if Plaintiff had argued on review that the ALJ failed to consider whether a combination of Plaintiff's impairments equaled 1.04(A) criteria, the Ninth Circuit has concluded that "the ALJ d[oes] not have an obligation to discuss medical equivalency sua sponte" when a plaintiff fails to argue to the ALJ how the plaintiff's condition equaled an impairment listing. *Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020).

14 – OPINION AND ORDER

severity was expected to continue, for at least twelve months. As such, the ALJ did not err in making her step three finding that Plaintiff did not meet the listed impairment under 1.04(A).

## IV. Plaintiff's Obesity

Plaintiff makes the cursory argument that the "ALJ failed to adequately address Plaintiff's obesity under SSR 19-2p" and that "[t]he ALJ erred by failing to address the limiting effects of obesity in assessing Plaintiff's residual functional capacity." Pl. Open. Br. 15.

To start, SSR 19-2p does not apply to this case because that ruling went into effect after the ALJ's decision. *See* Tr. 27 (ALJ decision dated April 4, 2018); SSR 19-2p, SSA-2018-0022, 2019 WL 2374244, at *1 ("We will apply this notice on May 20, 2019."). Therefore, Plaintiff's reliance on SSR 19-2p is misplaced.

Moreover, the ALJ recognized Plaintiff's obesity as a severe impairment and determined that his obesity limited his ability to perform work activities as required by SSR 85-28. Tr. 16. When assessing how obesity impacts an RFC, the ALJ will explain how she reached her conclusion that obesity caused any physical limitations. SSR 02-1p, 2002 WL 34686281, *1, *6 (S.S.A. Sept. 12, 2002). When assessing Plaintiff's RFC, the ALJ discussed Plaintiff's obesity and BMI when considering the limiting effects of his symptoms. Tr. 20-21. Ultimately, the ALJ accounted for Plaintiff's limitations in finding that Plaintiff could only perform work at a sedentary level. Tr. 17. Plaintiff does not assert how further discussion of his obesity would have otherwise affected the ALJ's step three finding or analysis of Plaintiff's functional

limitations. Thus, the Court finds that the ALJ appropriately considered the limiting effects of Plaintiff's obesity when determining his RFC.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 13th day of October, 2021.

                                                ANDREW HALLMAN
United States Magistrate Judge